**Rosa TORRES–GUZMAN and Alberto Torres-Guzman, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 85–7347.

United States Court of Appeals, Ninth Circuit.

Nov. 10, 1986.

Jose Luis Ramos, Los Angeles, Cal., for petitioners.

Dzintra Janavs, George Wu, Asst. U.S. Attys., Los Angeles, Cal., for respondent.

Before CANBY, REINHARDT, and NOONAN, Circuit Judges.

CANBY, Circuit Judge:

Rosa and Alberto Torres-Guzman, sister and brother, petition for review of the denial of their applications for suspension of deportation. The Board of Immigration Appeals (Board) found that the petitioners were not eligible for discretionary relief of suspension because they had failed to show that they were of good moral character as required by section 244(a)(1) of the Immigration and Naturalization Act (Act), 8 U.S.C. § 1254(a)(1). We find that the Board erred by failing to consider all the factors relevant to the evaluation of the petitioners' characters. Accordingly, we grant the petition, reverse and remand the case.

## FACTS

Rosa Torres-Guzman and her brother Alberto Torres-Guzman were born in 1963 and 1965, respectively. They, along with their parents and five other siblings, entered the United States unlawfully at San Ysidro, California in September 1975.

Rosa attended junior high school in Los Angeles from 1975 to 1978. She left school after the ninth grade in order to gain employment and help support her family. Since then she has worked continuously as a clerk in the accounting department of a California business. Her employer has submitted a letter on her behalf. In 1981, she married Rigoberto Chavez; a child, Adriana, was born to them later that year. Rosa and her husband own a 1987 Honda automobile and equity in real estate worth $6,400. Rosa has paid income taxes on her salary. Her husband is also a native Mexican who entered the United States unlawfully. He is employed in Los Angeles.

After entering the United States, Alberto attended elementary school and high school. His class rank upon graduation from high school was 526 of 802. At the time of the initial hearings before the Immigration Judge, he was unemployed. Neither Alberto nor his sister Rosa has ever been arrested or convicted of any crime.

In 1984, Rosa and Alberto planned to travel to Mexico on vacation. They were concerned about their ability to reenter the country. Before leaving, they purchased false birth certificates for $100 dollars apiece. They then applied for United States passports, presented the birth certificates, and swore to the validity of the birth certificates. The Passport Office checked the authenticity of the certificates and discovered the attempted fraud. The Immigration & Naturalization Service then began deportation proceedings.

At the deportation hearing on March 12, 1984, Rosa and Alberto admitted their unlawful entry. The immigration judge continued the hearing so that they might apply for suspension of deportation or voluntary departure. They so applied and, represented by counsel, offered evidence in their own behalf. The evidence established the facts just summarized about their families, education, and employment. They admitted their purchase and use of the false birth certificates.

The immigration judge denied Rosa's and Alberto's application for suspension of deportation or voluntary departure. He based his decision on the ground that Rosa and Alberto were not of good moral character. On May 20, 1985, the Board adopted the immigration judge's findings and affirmed the decision.

Rosa and Alberta now petition for review.

## DISCUSSION

### I. STANDARD OF REVIEW

We review the Board's denial of suspension of deportation for an abuse of discretion. *Ramirez-Durazo v. INS*, 794 F.2d 491, 497 (9th Cir.1986); *Hernandez-Robledo v. INS*, 777 F.2d 536, 541–42 (9th Cir.

1985). Where, as here, the Board has adopted the immigration judge's findings, we examine the immigration judge's decision for an abuse of discretion. *See Mawji v. INS*, 671 F.2d 342, 344–45 (9th Cir.1982).

## II. RELEVANT STATUTORY PROVISIONS

Section 244 of the Act, 8 U.S.C. § 1254, permits the Attorney General in his discretion to suspend deportation and adjust the status of an otherwise deportable alien. In order to be eligible for discretionary suspension, the alien must establish (1) continuous physically presence in the United States for at least seven years, (2) good moral character during that period, and (3) extreme hardship, as a result of deportation, to the alien, or to his spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence. *Israel v. INS*, 710 F.2d 601, 604 (9th Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1421, 79 L.Ed.2d 746 (1984); 8 U.S.C. § 1254(a)(1).

In 1952, Congress added a section to the Act, 8 U.S.C. § 1101(f), under which individuals falling into any of eight categories are precluded from establishing good moral character. These *per se* categories, now reduced to seven,[1] include the classes of drunkards, prostitutes, gamblers, and certain convicted criminals. One category encompasses those who have "given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6). Section 1101(f)'s final sentence is a nonclosure provision stating, "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."

## III. MERITS OF THE IMMIGRATION JUDGE'S DECISION

The immigration judge found that the petitioners were not precluded from establishing good moral character under section 1101(f)'s false testimony category.[2] Rather, he concluded that that they fell within section 1101(f)'s final sentence. We may uphold the Board's decision, which adopted the findings of the immigration judge, only on the basis articulated by the immigration judge. *See Mattis v. INS*, 756 F.2d 748, 750 (9th Cir.1985); *Ro v. INS*, 670 F.2d 114, 116 (9th Cir.1982).

We have held that it is an abuse of discretion to fail to consider all factors relevant to the determination of the existence of extreme hardship under section 1254(a)(1). *See Sullivan v. INS*, 772 F.2d 609, 610 (9th Cir.1985); *Mattis v. INS*, 756 F.2d at 750; *Patel v. INS*, 741 F.2d 1134, 1136 (9th Cir.1984). The consideration of all relevant factors is a general necessary condition for rational decisionmaking. When not displaced by the operation of section 1101(f)'s *per se* categories, this requirement applies with equal force to the determination of whether an alien has established good moral character.

■■■ The immigration judge here failed to consider all the relevant factors. In his decision, the immigration judge focused exclusively on the petitioners' attempt to gain United States passports fraudulently. He failed to mention, much less evaluate, Rosa's or Alberto's school record, family background, employment history, financial status, and lack of criminal record. We make no finding regarding how probative of good moral character the petitioners' evidence is on these topics; this is the task, in the first instance, of the immigration judge or the Board. Yet evidence regard-

---

**1.** In 1981, Congress amended § 1101(f) to exclude adulterers from the enumerated categories. Immigration & Naturalization Act Amendments of 1981, Pub.L. No. 97–116, § 2(c), 95 Stat. 1611, 1611.

**2.** Although this finding has not been questioned, we note in passing that it is consistent with our strict construction of § 1101(f)(6). *See Phinpathya v. INS*, 673 F.2d 1013, 1018–19 (9th Cir. 1981) (the term testimony does not encompass statements under oath unless made before a court or tribunal), *rev'd on other grounds*, 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984).

ing such aspects of an individual's personal history is always relevant and hence must be addressed and evaluated.

The Board contends that

[petitioners'] conduct, whether or not it falls within § 1101(f)(6), ... is sufficiently analogous to the conduct specified in § 1101(f)(6), that the INS on the evidence presented by petitioners here, properly concluded that it fell within the range of conduct which would support a conclusion that petitioners lacked good moral character.

We reject the suggestion that conduct not in fact falling within the seven *per se* categories of section 1101(f) may support, without any consideration of other relevant counterbalancing factors, a conclusion of lack of good moral character. Although the Board in performing its duties may be called upon to interpret the scope of section 1101(f)'s *per se* categories, it is not free to enlarge them by analogy. *Cf. Hernadez-Robledo*, 777 F.2d 536, 542 (9th Cir.1985) (declining to equate the destruction of property *per se* with lack of good moral character). Where, as here, petitioners have not committed acts bringing them within section 1101(f)'s enumerated categories, the Board must consider all of petitioners' evidence on factors relevant to the determination of good moral character.

The Board thus erred by basing its findings on a single, apparently isolated, incident. The inquiry into human character is an inherently open inquiry. The ingredients of human character may not be exhaustively specified. Thus, in the absence of a congressionally imposed *per se* rule, a statutory direction to determine the presence or absence of good moral character requires the fact finder to weigh and balance the favorable and unfavorable facts or factors, reasonably bearing on character, that are presented in evidence. To preclude consideration of favorable factors is to abuse discretion.

PETITION GRANTED; REVERSED and REMANDED.