972 F.2d 1341
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Olga PANIAGUA-MENDIETA, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70110.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1992.
Decided Aug. 17, 1992.
 
 Before FLETCHER, POOLE and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Olga Paniagua-Mendieta (Paniagua) is a deportable alien. An Immigration Judge denied her application for suspension of deportation and her alternative request for voluntary departure. The Board of Immigration Appeals (BIA) affirmed. We also affirm.
 
 FACTS
 
 3
 Paniagua illegally entered the United States from Mexico in 1975 using a counterfeit green card. Since that time, she has lived in San Francisco with her family. She has consistently been employed as a bartender or waitress but in the past did not report her cash income to the IRS or pay taxes. Administrative Record ("AR") 68.
 
 
 4
 Paniagua suffers from mitral insufficiency and mitral stenosis (cardiac ailments), results of a childhood bout of rheumatic fever. Her mother testified that "because she's always suffered from illnesses, I had to bring her [to the United States], I couldn't leave her alone." AR 95. A letter from her cardiologist dated November 15, 1984 reported:
 
 
 5
 She was seen in this office for the last time on June 24, 1983, at which time she was doing poorly with shortness of breath, and she was tired with chest pains, and again refused surgery. It is possible, in my opinion, that she would be adversely affected by living in a high altitude region and I feel that she probably will need continuous and sophisticated medical care for an indefinite time.
 
 
 6
 AR 147.
 
 
 7
 From roughly 1979 to 1983 Paniagua was involved in what a psychologist termed "a dysfunctional relationship" with Jorge Arrospide. AR 123. According to Paniagua's mother, Arrospide convinced Paniagua to aid him in a number of fraudulent schemes by manipulating her affections and by threatening to report her to the INS. On November 29, 1984, Paniagua agreed to repay the City and County of San Francisco $10,683 in General Assistance that she was not eligible to receive. AR 148. On July 18, 1985, Paniagua pled guilty to aiding and abetting one of Arrospide's false claims against the United States, 18 U.S.C. § 1001. AR 128. She was sentenced to pay $4000 restitution, a fine of $1100, and was placed on five years probation. AR 127. Paniagua no longer has any contact with Arrospide.
 
 
 8
 Following her conviction, Paniagua was ordered to show cause why she should not be deported. She admitted deportability because of her illegal entry, but applied for suspension of deportation or in the alternative for voluntary departure. She presented evidence before Immigration Judge ("IJ") Brian H. Simpson at a deportation hearing on April 18, 1986. The IJ delivered an oral decision that same day denying her application. AR 31-41. The Board of Immigration Appeals (BIA) affirmed in an opinion dated November 6, 1990. AR 2-5. Paniagua timely appealed to this court.
 
 JURISDICTION
 
 9
 The BIA's jurisdiction over the Immigration Judge's final order of deportation arises from 8 C.F.R. § 3.1(b)(2). This court has jurisdiction to review the BIA's decision under 8 U.S.C. § 1105a(a).
 
 STANDARD OF REVIEW
 
 10
 Denial of suspension of deportation is reviewed for abuse of discretion. INS v. Jong Ha Wang, 450 U.S. 139 (1981). Denial of voluntary departure is also reviewed for abuse of discretion. Villanueva-Franco v. INS, 802 F.2d 327, 329 (9th Cir.1986). Factual findings are to be reversed only if not supported by reasonable, substantial and probative evidence on the record considered as a whole. 8 U.S.C. § 1105a(a)(4).
 
 DISCUSSION
 I. Suspension of Deportation
 
 11
 The Attorney General has the discretion to suspend deportation of an otherwise deportable alien who (1) has been physically present in the United States for not less than seven years (2) is "a person of good moral character" during that time and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1). It is the alien's burden to prove that she satisfies the statutory criteria and that she merits the favorable exercise of discretion. Ramirez-Durazo v. INS, 794 F.2d 491, 497 (9th Cir.1986).
 
 
 12
 Under 8 U.S.C. § 1101(f), aliens who fall into seven specified categories are per se precluded from establishing good moral character. The IJ acknowledged that under BIA decisions, Paniagua's conviction for aiding and abetting false claims was not a crime of moral turpitude, one of the per se categories. AR 39. The IJ nevertheless concluded that Paniagua had not demonstrated good moral character. Her "use of a counterfeit green card, failure to declare earnings for income tax purposes, knowing false claims to welfare benefits based upon misrepresentations as to lawful permanent residence, when all of these factors are considered together it is impossible for this Court to conclude that such a person has the requisite good moral character for seven years immediately preceding the date of her application." AR 39-40. The BIA agreed with this conclusion. AR 5.
 
 
 13
 The BIA has wide discretion to determine if an applicant has demonstrated "good moral character." Villanueva-Franco, 802 F.2d at 329. Even so, it abuses its discretion if it fails to consider all relevant factors or state its reasons for reaching its decision. Torres-Guzman v. INS, 804 F.2d 531, 533 (9th Cir.1986); Mattis v. INS, 774 F.2d 965, 967 (9th Cir.1985) disapproved on other grounds, INS v. Rios-Pineda, 471 U.S. 444 (1985); Zavala-Bonilla v. INS, 730 F.2d 562, 567 (9th Cir.1984).
 
 
 14
 The BIA must consider all factors, favorable and unfavorable. Mattis, 774 F.2d at 969; Torres-Guzman, 804 F.2d at 533. Paniagua contends that the IJ and BIA examined only unfavorable evidence and ignored evidence in her favor. Specifically, she claims it was an abuse of discretion not to consider (1) the fact that the false green card was provided to Paniagua by her mother; (2) Paniagua's dysfunctional dependence on Arrospide, as documented by the psychologist's report; (3) her willingness to repay the City and County for wrongfully obtained welfare benefits. The IJ's decision mentioned all of these facts (AR 32, 35, 34, 40); the BIA's decision expressly mentioned the first two (AR 3, 4) and further stated its agreement with the IJ's findings of fact (AR 4).[1] When the record reflects that the BIA considered all relevant evidence, we may not reverse even if we would have weighed the equities differently. "Although we have required the Board to provide more than '[m]ere conclusory statements', all that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." Villanueva-Franco, 802 F.2d at 330 (citation omitted). Given the deferential standard of review, we cannot say that the BIA abused its discretion.
 
 
 15
 Because the BIA did not abuse its discretion in finding Paniagua ineligible for suspension of deportation because of her failure to satisfy one of the statutory qualifications, we need not examine the others. See Hernandez-Robledo v. INS, 777 F.2d 536, 542 (9th Cir.1985) (where lack of good moral character established, no need to examine extreme hardship).
 
 II. Voluntary Departure
 
 16
 The Attorney General may allow an alien to depart at her own expense in lieu of deportation if she can establish that she "is, and has been, a person of good moral character" for at least five years immediately preceding her application. 8 U.S.C. § 1254(e). Because the BIA found that Paniagua did not prove good moral character, it did not abuse its discretion in denying the application for voluntary departure. See Villanueva-Franco, 802 F.2d at 329-30.
 
 III. New Evidence
 
 17
 Since the 1986 deportation hearing, several things have changed that could bear on Paniagua's eligibility for suspension of deportation or voluntary departure. (1) Paniagua gave birth to a daughter, Crystal, on June 3, 1988. Crystal is an American citizen. (2) Her son Sergio became a lawful permanent resident of the United States. (3) Paniagua's heart condition appears to have worsened. Her cardiologist wrote on December 14, 1990 that she was "totally disabled" and "unable to fully care for her small child." On April 26, 1991, the same doctor wrote that "[t]he stress of deportation without access to proper medical attention would worsen her symptoms and put her life in danger." (4) She has continued her regular payments to the City and County. (5) Paniagua's probation terminated on July 17, 1990. Her probation Officer wrote, "It is believed that the offense was due to unusual circumstances and that she will not again be seen before the Court." These facts appear relevant both to Paniagua's moral character in the preceding seven years and to her claim of extreme hardship. Such significant changes in circumstances should be considered in an appropriate forum.
 
 
 18
 That forum is before the BIA and the IJ. When reviewing a deportation order, this court's decision must rely "solely upon the administrative record upon which the deportation order is based." 8 U.S.C. § 1105a(a)(4). We may not consider evidence introduced for the first time in Paniagua's appellate brief. Paniagua argues that the case should be remanded with instructions to consider these new facts. The Ninth Circuit has previously rejected this argument. Alvarez-Madrigal v. INS, 808 F.2d 705, 707 (9th Cir.1987). To introduce her new evidence, Paniagua must petition the BIA to reopen her case pursuant to 8 C.F.R. § 3.2 (1990). Id.
 
 
 19
 The parties inform us that Paniagua has filed a petition to reopen. Because of the elapse of time since the hearing before the IJ and the several changes that have occurred, we stay our mandate until the BIA has ruled on the petition or has issued a stay of its own. See Hurn Bu Roe v. INS, 771 F.2d 1328, 1335 (9th Cir.1985); Roque-Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir.1985); Alvarez-Ruiz v. INS, 749 F.2d 1314, 1316 (9th Cir.1984).
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A fair reading of the BIA's statement at AR 5 ("It is not within the province of this Board to speculate as to the psychological motivations of why the respondent became involved in the wrongdoing") is that the Board gave the psychologist's report little weight, not that it refused to examine it