74 F.3d 1245
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Yin Fen FLORES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70178.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 13, 1995.*
Decided Jan. 5, 1996.
 
 Before: CHOY, BEEZER, and THOMPSON, Circuit Judges.
 ORDER
 The petition for rehearing filed by petitioner Yin Fen Flores is granted, the court having considered the response filed by the Immigration and Naturalization Service thereto and petitioner Flores having filed a reply to that response.
 Also, simultaneously the opinion filed on September 26, 1995, 66 F.3d 1069 (9th Cir.1995) is withdrawn, and the attached memorandum disposition is filed in its stead.
 Before: CHOY, BEEZER, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Yin Fen Flores, a.k.a. Eileen York, a native and citizen of Taiwan, appeals the decision of the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") denial of Flores's request for suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. Sec. 1254(a)(1). We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a).
 
 
 3
 * Flores first came to the United States in 1980. She married an American citizen, Ernest Marvin Flores, and on the basis of that marriage was granted permanent resident status in 1981. On February 15, 1990, the INS initiated deportation proceedings against Flores by issuing an Order to Show Cause ("OSC"). The OSC charged Flores with obtaining a visa through a fraudulent marriage and entering the United States for the purpose of working here without the required labor certification. Flores applied for the relief of suspension of deportation on March 11, 1991. After a hearing, the IJ found Flores deportable as charged.
 
 
 4
 The IJ concluded that Flores was statutorily ineligible for suspension of deportation because: (1) she could not establish seven years continuous physical presence in the United States due to a meaningful absence of four months between September of 1985 and January of 1986; (2) she was unable to establish good moral character mainly due to a March 30, 1987 criminal conviction for welfare fraud; and (3) she failed to establish extreme hardship to herself and could not establish hardship to her American-born children because her parental rights had been terminated.
 
 
 5
 Flores appealed the IJ's decision to the BIA. The BIA's decision, dated March 24, 1994, determined that Flores satisfied the continuous seven-year physical presence requirement by her continuous presence in the United States from 1987 to 1994, the years accrued while her non-frivolous appeal was pending. The BIA, however, determined that Flores did not meet the moral character requirement because of her 1987 welfare fraud conviction. In the alternative, the BIA concluded that Flores did not merit suspension of deportation in the exercise of discretion. Flores timely appeals.
 
 II
 
 6
 We review de novo per se moral character determinations under 8 U.S.C. Sec. 1101(f), see Abedini v. INS, 971 F.2d 188, 190-91 (9th Cir.1992) ("We review de novo the Board's determination of purely legal questions regarding the requirements of the Immigration and Nationality Act."), while we review other moral character determinations for an abuse of discretion. Torres-Guzman v. INS, 804 F.2d 531, 533 (9th Cir.1986). We review a discretionary denial of voluntary departure for an abuse of discretion. Rashtabadi v. INS, 23 F.3d 1562, 1566 (9th Cir.1994).
 
 III
 
 7
 Section 244(a)(1) of the INA provides that the Attorney General in her discretion may suspend deportation and adjust the status of an otherwise deportable alien who "has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application [for suspension of deportation], and proves that during all of such period he was and is a person of good moral character...." 8 U.S.C. Sec. 1254(a)(1). Flores contends that the BIA erred in concluding that she was not of good moral character during the relevant seven-year period.
 
 
 8
 The BIA noted, and the parties agree, that for purposes of determining Flores's physical presence, the relevant seven-year period was from March 24, 1987 to March 24, 1994, the date of the BIA decision. The BIA did not explicitly note, however, what period it used to determine Flores's moral character. The statute allows suspension of deportation if the alien "has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character." 8 U.S.C. Sec. 1254(a)(1) (emphasis added). The BIA thus must use the same period to determine physical presence and moral character: from March 24, 1987 to March 24, 1994.
 
 
 9
 The BIA held that Flores's welfare fraud conviction per se precluded her from proving good moral character under Sec. 101(f)(3) of the INA, 8 U.S.C. Sec. 1101(f)(3):
 
 
 10
 Thus, even if the respondent's conviction had been expunged, it could have been considered for immigration purposes in determining whether she established good moral character under section 101(f)(3) of the Act.
 
 
 11
 We therefore conclude that, regardless of the other bases upon which the immigration judge determined that the respondent failed to demonstrate the requisite good moral character, this basis [the welfare fraud conviction] was sufficient to make such a finding....
 
 
 12
 BIA Decision at 6.
 
 
 13
 This finding was in error. Although Flores's March 30, 1987 conviction was within the seven-year period, she committed the offense between 1983 and 1985, outside of the seven-year period. Section 101(f)(3) requires that the commission of the offense, rather than the conviction, occur within the seven-year period:
 
 
 14
 No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
 
 
 15
 (3) a member of one of the more classes of persons, whether excludable or not, described in ... subparagraphs (A) and (B) of section 1182(a)(2) of this title ... if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period.
 
 
 16
 8 U.S.C. Sec. 1101(f) (emphasis added).
 
 
 17
 The BIA could have found that Flores was not of good moral character under the catchall clause of Sec. 1101(f) ("The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."). The fact that Flores committed welfare fraud prior to March 24, 1987 could indicate that her moral character remained poor after March 24, 1987. See, e.g., Villaneuva-Franco v. INS, 802 F.2d 327, 330 (9th Cir.1986) (BIA may consider crimes occurring outside statutory period in making discretionary decision whether to allow voluntary departure); Hibbert v. INS, 554 F.2d 17, 20 (2d Cir.1977) (BIA may consider crimes occurring outside statutory period in determining moral character). Likewise, the IJ discussed several other factors which the BIA could have relied upon to find that Flores was not of good moral character under the catchall clause. The BIA, however, discussed only the welfare conviction and the Sec. 1101(f)(3) per se clause. We can only affirm the BIA's holding as to moral character on the ground the BIA articulates. See Torres-Guzman, 804 F.2d 532, 533 (9th Cir.1986). Here, the BIA's stated ground is in error.
 
 
 18
 In the alternative, the BIA held that Flores did not merit suspension of deportation in the exercise of discretion. Flores contends that the BIA abused its discretion by failing to consider a relevant factor--the hardship her deportation would cause her husband, Michael Benedetti, a U.S. citizen whom Flores married in 1991.
 
 The BIA held that
 
 19
 the respondent does not merit suspension of deportation in the exercise of discretion. The respondent has shown a complete disregard for the laws of this county, both immigration and otherwise. She obtained her lawful permanent resident status by means of a sham marriage in 1981. She "remarried" in 1985, prior to terminating her first marriage. She committed welfare fraud over a period of two years from 1983 to 1985 by receiving public aid benefits while fraudulently concealing the existence of other income or assets, and then, when it became clear that she was going to be prosecuted, she attempted to evade prosecution by traveling to Taiwan for 4 months and then relocating upon her return. The respondent's arguments on appeal do not persuade us that she is deserving of relief in the exercise of discretion.
 
 
 20
 BIA Decision at 7. While this list of factors opposing relief is impressive, it contains no discussion of the effect of her deportation on her husband. Hardship on a spouse is explicitly identified in the statutory requirements for suspension of deportation. 8 U.S.C. Sec. 1254(a)(1). The BIA abuses its discretion if it fails to show proper consideration of all factors when weighing equities and denying relief. Yepes-Prado v. INS, 10 F.3d 1363, 1366 (9th Cir.1993). Here the BIA failed to mention a factor weighing in favor of providing relief.
 
 
 21
 The INS's claim that Flores failed to raise the issue of hardship on her husband is not credible. Attached to her brief to the BIA was a wedding photograph, a marriage record, and a declaration by Mr. Benedetti in which he stated:
 
 
 22
 Our marital relationship is one of strong commitment and love. If Eileen were deported, I would accompany her to Taiwan and live in that country. I am fully aware of the difficulties in trying to make that kind of adjustment. I cannot speak Chinese and have little knowledge of Chinese culture. I would not be willing to live apart from Eileen, however.
 
 
 23
 This declaration brought the issue of hardship on Mr. Benedetti before the BIA, which abused its discretion in not addressing the issue. The BIA need not find such hardship persuasive, but must at least address it.
 
 IV
 
 24
 We REVERSE and REMAND for further proceedings on the issues of Yin Yen Flores's moral character during the relevant seven-year period and the effect of Mr. Benedetti's potential hardship upon the exercise of administrative discretion.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of the circuit except as provided by Ninth Circuit Rule 36-3