**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellant,*

        v.

VIKEN HOVSEPIAN; VIKEN
YACOUBIAN,
             *Defendants-Appellees.*

No. 99-50041

D.C. No.
CR-82-0917-MRP

VIKEN HOVSEPIAN,
             *Plaintiff-Appellee,*

        v.

UNITED STATES OF AMERICA;
ALBERTO R. GONZALES,* Attorney
General, United States Department
of Justice,
             *Defendants-Appellants.*

Nos. 99-56922
     00-55320

D.C. No.
CV-98-01001-MRP

---

*/**Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

12233

VIKEN HOVSEPIAN; VIKEN
YACOUBIAN,

        *Plaintiffs-Appellees,*

        v.

UNITED STATES OF AMERICA;
ALBERTO R. GONZALES,** Attorney
General, United States Department
of Justice,

        *Defendants-Appellants.*

No. 01-55247

D.C. No.
CV-98-01001-MRP

OPINION

Appeals from the United States District Court
for the Central District of California
Mariana R. Pfaelzer, District Judge, Presiding

Argued and Submitted En Banc
June 23, 2005—San Francisco, California

Filed September 6, 2005

Before: Mary M. Schroeder, Chief Judge, and
Dorothy W. Nelson, Andrew J. Kleinfeld,
Michael Daly Hawkins, Sidney R. Thomas, Susan P. Graber,
M. Margaret McKeown, Ronald M. Gould, Richard A. Paez,
Marsha S. Berzon, and Richard R. Clifton, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

A. Ashley Tabbador, Assistant United States Attorney; Debra W. Yang, United States Attorney; and Leon W. Weidman, Chief, Civil Division, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellant and the defendants-appellants.

Barrett S. Litt, Litt, Estuar, Harrison, Miller & Kitson, LLP; Michael J. Lightfoot, Lightfoot, Vandevelde, Sadowsky, Medvene & Levine; and Mathew Millen, Law Offices of Mathew Millen, Los Angeles, California, for the defendants-appellees and the plaintiffs-appellees.

**OPINION**

GRABER, Circuit Judge:

This case comes before the en banc court for the second time. The first time, in *United States v. Hovsepian*, 359 F.3d 1144, 1165-69 (9th Cir. 2004) (en banc), we reversed the district court's decision to administer the oath of citizenship to Appellees Viken Hovsepian and Viken Yacoubian because of legal errors in the court's consideration of their applications for naturalization. On remand, the government pursued additional discovery and the court took further evidence and heard argument, again finding that Appellees had established that they possess good moral character, as required by 8 U.S.C.

§ 1427(a)(3). The court ratified its August 18, 2000, administration of the oath of allegiance and the swearing in of Appellees as United States citizens. The government timely sought review, and we affirm.

**[1]** The key to our present decision is the standard of review. We review for clear error the district court's findings that Appellees possess good moral character, which are findings of fact. *See* Fed. R. Civ. P. 52(a) (mandating that "[f]indings of fact . . . shall not be set aside unless clearly erroneous"); *Yuen Jung v. Barber*, 184 F.2d 491, 497 (9th Cir. 1950) (holding that findings of good moral character are findings of fact). When the court rests its findings on an assessment of credibility, we owe even greater deference to those findings. *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). That principle has unusual force here because the starting point for the government's concerns is Appellees' crimes in 1982; the same district judge presided over the criminal proceedings and over all of the protracted litigation concerning Appellees' efforts to become citizens of the United States, thus observing Appellees personally for more than two decades. We may not disturb the district court's findings of fact unless we have the definite and firm conviction that the court has made a mistake. *Id.* at 573. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573-74.

**[2]** Of equal importance is the principle that we must fulfill congressional intent. As we explained in our previous opinion, under the statutes that govern the relationship between the determination of good moral character and the crimes that Appellees committed 23 years ago, Congress has made the judgment that rehabilitation is possible. *Hovsepian*, 359 F.3d at 1166-67.[1] Under those statutes, Appellees are eligible for

---

[1]In our previous opinion, we explained that 8 U.S.C. § 1101(f)(8), which precludes a finding of good moral character with respect to anyone

citizenship if they demonstrate that, "during the five years immediately preceding the date of filing" their applications for naturalization, they have been, and still are, persons "of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a). Thus, Appellees were required to demonstrate good moral character during the period from August 1992 (five years before they filed their applications) through the date of the most recent hearing in 2004, a period of about 12 years.

Conduct occurring outside the regulatory period is relevant only insofar as it bears on Appellees' *present* moral character. *See* 8 U.S.C. § 1427(e) ("[T]he Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for [the] determination [of good moral character during that period] the applicant's conduct and acts at any time prior to that period."); 8 C.F.R. § 316.10(a)(2) (allowing earlier conduct to be considered "*if* the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or *if* the earlier conduct and acts appear relevant to a determination of the applicant's present moral character" (emphasis added)). As we cautioned in *Santamaria-Ames v. INS*, 104 F.3d 1127, 1132 (9th Cir. 1996), if the applicant demonstrates exemplary conduct during the specified statutory period, "then his application cannot be denied based solely on his prior criminal record."

> To hold otherwise would sanction a denial of citizenship where the applicant's misconduct . . . was many

convicted of an "aggravated felony," applies only to conduct occurring after November 29, 1990, the effective date of the statute. *Hovsepian*, 359 F.3d 1166. Because Appellees were convicted in 1984 for conduct occurring in 1982, § 1101(f)(8) is not a bar to their naturalization.

years in the past, and where a former bad record has been followed by many years of exemplary conduct with every evidence of reformation and subsequent good moral character. Such a conclusion would require a holding that Congress had enacted a legislative doctrine of predestination and eternal damnation,

*id.* at 1131, whereas the statutes contemplate rehabilitation, *Yuen Jung*, 184 F.2d at 495.

[3] In a 42-page order, the district court detailed its findings about Appellees and, most especially, about the contested issue of their good moral character during the requisite 12 years. Those findings describe two people who, in spite of the crimes that they committed in their youth, completely reformed as adults. *See Hovsepian*, 359 F.3d at 1148 (detailing the accomplishments of Hovsepian and Yacoubian and the exemplary lives that they have led since serving their prison terms). The evidence at the 2004 hearing included declarations from religious, educational, and political leaders who attested to Appellees' good moral character. Appellees continue their positive contributions to the Armenian community and to the community at large; both remain employed and married; both continue to reject the use of violence to express a political view; both regret their actions in 1982.

Yacoubian became the principal of the Rose and Alex Pilibos Armenian School in 1993 and, in addition to being a positive role model for youth, he has become a leader in the larger Armenian-American community. Yacoubian has "promoted dialogue for conflict resolution in lieu of violence" and has become "a respected advocate of a worldview that . . . emphatically rejects the very same elements that, as a young man, pushed him into a course which he now deeply regrets." Having undergone years of therapy, to which he principally credits his psychological transformation, Yacoubian has

earned a doctorate in counseling psychology at the University of Southern California.

Hovsepian, likewise, has "become a role model amongst youth groups and student groups, to which he frequently lectures about the counter-productiveness of violence and the usefulness of dialogue to resolve conflicts on all levels." Hovsepian works in the field of finance and banking, but devotes 15 to 20 hours a week to volunteer work with international Armenian political and cultural organizations in which he is a respected leader and has advocated nonviolence and democratization in Armenia. In particular, he publicly has advocated dialogue between Armenia and Turkey.

The government's argument to the district court on remand, and in this appeal, is primarily that Hovsepian and Yacoubian gave false testimony for the purpose of obtaining an immigration benefit. Under 8 U.S.C. § 1101(f)(6), such an act precludes a finding of good moral character. *Kungys v. United States*, 485 U.S. 759, 779 (1988). In *Kungys*, the Court held that the bar applies to any misrepresentation "made with the subjective intent of obtaining immigration benefits," whether or not the misrepresentation is material to the immigration decision. *Id.* at 780.[2]

In response to the government's attempts to show that

---

[2]The government does *not* argue that Appellees are ineligible for naturalization because they were affiliated with a terrorist group. *See* 8 U.S.C. § 1424(a)(4)(C) & (c) (requiring an applicant to show that, during the 10 years before the filing of the application, the applicant was not associated with a group that "advocates or teaches . . . the unlawful damage, injury, or destruction of property"). When we remanded the case, we directed that the government have an opportunity to present evidence on its theory that Appellees may have been associated with such a group. *Hovsepian*, 359 F.3d at 1167. On remand, however, the government expressly conceded that neither Appellee was associated with a prohibited organization and that association with the Armenian Revolutionary Federation does not disqualify an applicant for naturalization.

Appellees made various false statements in order to secure United States citizenship, the district court concluded that no intentionally false testimony was given; that, to the extent that any statements in the naturalization applications were inaccurate, the inaccuracies resulted from faulty memory, misinterpretation of a question, or innocent mistake; and that no false statement, if there were any, was made for the purpose of obtaining an immigration benefit. Whether a person has the subjective intent to deceive in order to obtain immigration benefits is a question of fact. *Kungys*, 485 U.S. at 782; *cf. Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 670 n.12 (9th Cir. 1990) ("A state of mind issue such as actual motive is a 'pure question of fact' normally subjected to review under the 'clearly erroneous' standard.").

**[4]** We have carefully considered each of the challenged findings and conclude that none is clearly erroneous. For example, the district court found that Yacoubian did not testify falsely or with an intent to deceive when he described the Armenian Youth Federation ("AYF") as a "youth cultural and educational organization," rather than as a "political" organization, in the "Memberships and Organizations" section of his application for naturalization. Yacoubian listed both the AYF and its parent organization, the Armenian Revolutionary Federation ("ARF"), but he described only the latter as a "political" organization. Yacoubian explained at trial that he viewed the AYF primarily as fostering cultural activities for youth, and the district court found that he answered the question to the best of his understanding and without an intent to deceive. We find no clear error in that determination.

Nor, for example, do we find clear error in the district court's determination that Hovsepian made an honest oversight when he stated that he had never been known by a name other than "Viken Hovsepian" or "Alex Hovsepian." In fact, Hovsepian's Lebanese passports from the 1970s (which were in the government's possession at the time of Hovsepian's deposition) contained the name "Vicken Archavir Sarkissian

dit Hovsepian," which, the district court found, meant "Vicken Archavir Sarkissian *changed to* Hovsepian." At trial, Hovsepian explained that "Archavir" was his father's name, that "Sarkissian" is a name that his family used many years ago in Lebanon, and that he has never used or been known by any surname other than Hovsepian in the United States. Also, Hovsepian did not mention a nickname, "Hratch," that he used during his 1982 crime, until the government confronted him with the nickname in a deposition. Neither omission convinces us that the district court clearly erred. The court was entitled to view both names as tangential and their omissions as the product of honest oversight, rather than as deliberate misrepresentations made with the subjective intent to secure naturalization.

As a final example, the district court found that Appellees did not testify falsely with the subjective intent to gain an immigration benefit when they answered "no" to this question: "Have you at any time, anywhere, ever ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion?" This is a question susceptible to many interpretations, as a review of our immigration cases involving the concept of persecution will demonstrate. The district court was entitled to find that Appellees gave negative answers because of their reasonable interpretations of the terms used in the question, based on consultations with counsel, and not because they sought to hide their criminal convictions.

**[5]** The district court, in short, was entitled to believe Appellees with respect to those and other statements. Moreover, the district court was entitled to view Appellees as generally credible, despite the government's assertion that Appellees displayed an overall lack of candor and made self-serving assertions of lack of memory. The district court's credibility determinations reflect the court's "carefully considered views of more than twenty years" of experience with

Appellees and, as we emphasized above, are determinations to which we owe considerable deference.

The government also argues that the district court strayed from our instructions to incorporate the entirety of Appellees' criminal history in the calculus of good moral character. *Hovsepian*, 359 F.3d at 1167-68. We disagree. At the 2004 proceedings on remand, the court took additional evidence about the 1982 crimes. The government cross-examined each Appellee about the details of the crimes. The court "admitted into evidence and considered" numerous documents relating to the 1982 crimes, including pre-sentence reports. The district court acknowledged that the 1982 crimes were "serious," reminded counsel that it was especially familiar with the background because it had presided over Appellees' trial and had sentenced them to prison for their acts, and "listened to all the evidence" before rendering the 2004 decision. After following our instructions to consider the entirety of Appellees' criminal histories, the district court found that the evidence "very clearly reflects [their] fundamental moral transformation, and amply reveals good moral character."

**[6]** In conclusion, the district court's findings that Dr. Viken Hovsepian and Dr. Viken Yacoubian are persons of good moral character, within the meaning of 8 U.S.C. §§ 1101(f) and 1427(a)(3), are not clearly erroneous, and the court committed no legal error in re-analyzing the evidence following our remand in 2004.

AFFIRMED.