**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMEH HUSSEIN,<br>*Plaintiff-Appellant,*<br><br>v.<br><br>ROBIN BARRETT, San Francisco Field Office Director; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br>*Defendants-Appellants.* | No. 14-16303<br><br>D.C. No.<br>3:11-cv-05317-JST<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted
February 12, 2016—San Francisco, California

Filed April 29, 2016

Before: A. Wallace Tashima, William A. Fletcher, Circuit
Judges, and Stanley Allen Bastian, District Judge.*

Opinion by Judge Bastian

---

* The Honorable Stanley A. Bastian, United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Immigration

The panel vacated the district court's order denying Sameh Hussein's naturalization application for failure to satisfy his statutory burden to establish good moral character.

The panel held that the district court erred in failing to make specific findings that Hussein's statements under oath to the Sacramento Superior Court regarding his marital status were material and thus perjurious unlawful acts. The panel also held that the district court abused its discretion in failing to consider all relevant factors when it made its ultimate determination, because a violation of the regulation's catch-all provision 8 C.F.R. § 316.10(b)(3)(iii) is not a per se bar to a good moral character finding.

### COUNSEL

Stephen A. Shaiken (argued), Law Offices of Stephen A. Shaiken, San Rafael, California; Robert G. Ryan, Law Offices of Robert G. Ryan, San Francisco, California, for Plaintiff-Appellant.

Regan Hildebrand (argued), Senior Litigation Counsel; Jeffrey S. Robins, Assistant Director; William C. Peachey, Director; Joyce R. Branda, Acting Assistant Attorney General; Office of Immigration Litigation, United States

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Department of Justice, Washington, D.C., for Defendants-Appellees.

## OPINION

BASTIAN, District Judge:

Sameh Hussein, a lawful permanent resident, appeals the district court's denial of his naturalization application. After a bench trial, which followed a decision adverse to Hussein by the United States Citizenship and Immigration Services (USCIS), the district court concluded that Hussein failed to satisfy his statutory burden of establishing good moral character, but in doing so it erred in its application of the relevant statutes and regulation. We vacate the district court's order denying citizenship and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Sameh Hussein, a citizen of Egypt, came to the United States in 1996 on a student visa. He obtained lawful permanent resident status in 2000, as a result of his marriage to a United States citizen, Debra Hawley. He separated from Hawley in 2003, but they did not divorce until 2008.

Hussein met Stacey Mabrey while still married to Hawley. After his separation from Hawley, he began a relationship with Mabrey. In December 2003, near the beginning of his relationship with Mabrey, his close friend performed a religious blessing for the couple. The blessing lasted less than thirty seconds and consisted of a recitation of the first verse of the Koran. According to the friend who performed the blessing, it is meant to protect a new

relationship and to reflect the couple's commitment to each other, but does not constitute a marriage in Islam, does not guarantee the couple will one day be married, and does not constitute an engagement to be married.

Hussein and Mabrey never married, but cohabited until 2009 when they separated. They have three children together. Mabrey had two children born prior to the relationship that Hussein raised and supported. After they separated, Mabrey took the children to Qatar to visit Hussein's mother, but refused to return to the United States. In his attempts to force Mabrey to return the children, Hussein contacted various law enforcement agencies, including the FBI and the Elk Grove Police Department. During these conversations, the law enforcement officials were lead to believe that Mabrey was his wife. At trial, Hussein explained he was in the habit of calling Mabrey his wife in order to protect his social standing and to "avoid public embarrassment and avoid having to go through all that explanation."

Stacey Mabrey eventually returned to the United States and was charged with abduction and intent to conceal, although the charges were eventually dropped. Hussein and Mabrey became embroiled in a custody dispute in California. As part of the proceedings, Hussein filed a declaration under penalty of perjury with the Sacramento Superior Court in which he stated that although he and Mabrey were never married, they were married under Islamic rules on December 13, 2003, and the marriage is considered legal in Egypt, where he is a citizen. Ultimately, Hussein and Mabrey were awarded joint custody of their children, but Hussein was awarded physical custody.

Hussein filed his application for naturalization in September 2005, which was denied on December 9, 2010 after USCIS found Hussein lacked good moral character because he committed tax fraud. Hussein exhausted his administrative remedies and sought *de novo* review with the district court, denying he committed tax fraud and asserting any discrepancies were innocent mistakes that were corrected with amended tax returns.

Just one month prior to trial, the government decided not to pursue the tax fraud allegations and changed the grounds upon which it opposed Hussein's application for naturalization. The government's new theory at trial was that Hussein lacked good moral character because he gave false testimony at his naturalization interviews on March 11, 2010 and June 22, 2010, when he testified he had only been married once and the person to whom he had been married was Debra Hawley. The government's theory rested on its belief that Hussein and Mabrey were married.

The district court found that Hussein and Mabrey entered into a religious blessing meant to reflect their commitment to each other in late 2003, but the blessing did not constitute a legal or religious marriage. Consequently, it rejected the government's argument that Hussein lacks good moral character because he gave false testimony at his naturalization interviews, his deposition, and at trial, when he testified that he was married only once. These statements were not false because Hussein never actually married Stacey Mabrey.

Instead, the district court found that Hussein knowingly misrepresented to the Sacramento Superior Court that he was married to Mabrey because he believed making such a

misrepresentation would benefit him in his custody dispute. Consequently, it concluded that Hussein's petition must be denied because he "committed unlawful acts that adversely reflect upon [his] moral character." These acts consisted of Hussein's false representation to the Sacramento Superior Court, which was under oath, as well as his statements to law enforcement that he was married to Mabrey, which were not under oath.

The district court did not consider counterbalancing factors regarding the issue of Hussein's good moral character. Also, while it did not conclusively find Hussein committed perjury in his declaration, it noted that these repeated false representations show him to lack good moral character under the regulation. Ultimately, the district court denied his petition because Hussein failed to satisfy his burden of establishing good moral character.

**STANDARD OF REVIEW**

We review the district court's findings of fact for clear error, including findings pertaining to good moral character. *United States v. Hovsepian*, 359 F.3d 1144, 1165 (9th Cir. 2004) (*Hovsepian I*). "We may not disturb the district court's findings of fact unless we have the definite and firm conviction that the court has made a mistake." *United States v. Hovsepian*, 422 F.3d 883, 885 (9th Cir. 2005) (*Hovsepian II*). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 885–86. We review de novo the district court's conclusions of law. *Hovsepian I*, 359 F.3d at 1165.

## ANALYSIS

In order to become a naturalized citizen, an applicant must demonstrate that he satisfies the numerous statutory criteria of the Immigration and Naturalization Act, including the requirement that the applicant "has been and still is a person of good moral character" during the statutorily defined period of residency. 8 U.S.C. § 1427(a); *United States v. Dang*, 488 F.3d 1135, 1138–39 (9th Cir. 2007). An applicant bears the burden to show his or her eligibility for citizenship in every respect. *Hovsepian I*, 359 F.3d at 1168. The USCIS stipulated that Hussein satisfied all the statutory and regulatory requirements for naturalization other than the good moral character requirement.

The determination of good moral character is governed by both a statute, 8 U.S.C. § 1101(f), and a regulation, 8 C.F.R. § 316.10. While the statute does not define "good moral character," it lists specific characteristics that preclude a finding of good moral character. 8 U.S.C. § 1101(f). A person shall not "be regarded as, or found to be, a person of good moral character" if, within the statutory period, he or she is an admitted or convicted prostitute, smuggler, polygamist, moral turpitude criminal, drug user as defined by statute, or drug trafficker (during the relevant good moral character period), a gambler deriving substantial income from gambling, one convicted of two or more gambling offenses during the statutory period, one who gives false testimony for obtaining naturalization, one who has been confined in a penal institution for more than 180 days during the statutory period, or one convicted of an aggravated felony, at any

time.[1] 8 U.S.C. § 1101(f); *see also Dang*, 488 F.3d at 1139 n.2. These enumerated factors provide a per se bar to naturalization. *Torres-Guzman v. INS*, 804 F.2d 531, 533 (9th Cir. 1986). In addition, the statute contains a "catch-all" provision:

> The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.

8 U.S.C. § 1101(f); *Dang*, 488 F.3d at 1139.

If the person has not committed acts bringing them within the enumerated categories, and instead, the question is whether the person meets the catch-all provision, the adjudicator must consider all of the petitioners' evidence on factors relevant to the determination of good moral character. *Torres-Guzman*, 804 F.2d at 534. Specifically, we held:

> In the absence of a congressionally imposed *per se* rule, a statutory direction to determine the presence or absence of good moral character requires the fact finder to weigh and balance the favorable and unfavorable facts or factors, reasonably bearing on character, that are presented in evidence. To preclude

---

[1] Recently, we held that 8 U.S.C. § 1101(f)(1) was unconstitutional because there is no rational basis for classifying persons afflicted by chronic alcoholism as persons who innately lack good moral character. *Ledezma-Cosina v. Lynch*, __ F.3d. __ , 2016 WL 1161260 (9th Cir. Mar. 24, 2016).

consideration of favorable facts is to abuse discretion.

*Id.*

Relevant factors include: education, family background, employment history, financial status, and lack of criminal record. *Id.* at 533.

Pursuant to the statute, a regulation was promulgated, specifically 8 C.F.R. § 316.10, to offer "guidance to officials making moral character determinations." *Dang*, 488 F.3d at 1139.[2] The regulation instructs the USCIS to evaluate claims of good moral character on a case-by-case basis taking into account the enumerated elements in the section as well as the standards of the average citizen in the community of residence. 8 C.F.R. § 316.10(a)(2). The regulation includes the enumerated categories found in the statute, as well as an additional subsection, as follows:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:
>
> (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character,

---

[2] In *Dang*, we held that this regulation is a permissible interpretation of section 1101(f) under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). 488 F.3d at 1140–41.

or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b) (1) or (2).

8 C.F.R. § 316.10(b)(3)(iii).

In this case, we are asked specifically to address whether the regulation creates additional enumerated categories. The distinction between an enumerated category and a non-enumerated category is critical because it determines the scope of the relevant evidence regarding good moral character. The enumerated categories are per se bars to naturalization, which means that the court should not consider other evidence once it finds that one of the categories exists. However, if a non-enumerated category is being considered then the court is required to also consider all evidence relevant to the applicant's character.

Here, the decision to reject Hussein's application was based on the district court's conclusion that Hussein gave repeated false representations regarding his marital status, both to law enforcement and to the Sacramento Superior Court. In reaching this conclusion, the district court relied on the regulation, not the statute, and held as a matter of law that 8 C.F.R. § 316.10(b)(3)(iii) is an enumerated factor that provides a per se bar to a good moral character finding. This was error. While we have held that section 316.10 is a permissible exercise of congressional delegation, *see Dang*, 488 F.3d at 1141, we have not held that subsection (b)(3)(iii)'s catch-all provision is an enumerated element that serves as a per se bar to naturalization. And we decline to do so in this instance. On the contrary, section 316.10(b)(3)(iii), while providing guidance to officials, is not a Congressionally imposed *per se* rule, as contemplated by

*Torres-Guzman.* The statute creates per se bars to naturalization, but the regulation does not.

There is no suggestion in the record that Hussein's two statements to law enforcement officers concerning Mabrey were made under oath or penalty of perjury. These statements cannot legally be perjurious because, under California law, for a statement to be perjury it must be made under oath or under penalty of perjury. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004)(en banc); Cal. Penal Code § 118. On the other hand, the false representation made by Hussein under oath to the court may or may not have been perjury. It is not possible to reach that conclusion based on this record. Under California law, the elements of perjury include a willful statement under oath of any material matter which the witness knows to be false. *Id*. The legal standard for materiality is whether the statement in question "could probably have influenced the outcome of the proceedings." *Id.* at 984. When applying the materiality test, California law focuses on whether the false statement, at the time it was made, had the tendency to probably influence the outcome of the proceedings, not whether, as a matter of historical fact, the false statement probably did influence the outcome of the proceedings. *Id.*

In making its ruling, the district court did not address whether Hussein's statements to the Sacramento Superior Court were material to the proceeding. Without this analysis, it is impossible for us to review the district's conclusion that Hussein committed an unlawful act that reflects adversely on his moral character. On remand, the district court should make a finding on whether Hussein's statements made to the California courts were material, *i.e.* that Hussein "committed

an unlawful act." Absent a finding of materiality, there can be no conclusion of perjury.

## CONCLUSION

Hussein's statements to law enforcement officers were not under oath and cannot be perjury. Hussein's declaration to the Sacramento Superior Court could be perjury if it was material. The failure of the district court to make specific findings with respect to the materiality of Hussein's statements made to the Sacramento Superior Court prevents us from reviewing the district court's determination that Hussein committed unlawful acts that adversely reflect upon his moral character. Additionally, because a violation of 8 C.F.R. § 316.10(b)(3)(iii) is not a per se bar, the district court abused its discretion in failing to consider all relevant factors in making its ultimate determination that Hussein failed to show he is of good moral character. Accordingly, the judgment of the district court is vacated and this matter is remanded for further proceedings consistent with this opinion.

Costs on appeal are awarded to appellant to the extent authorized by law.

**VACATED and REMANDED.**