# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2584
_____

Serkan Haciosmanoglu

*Plaintiff - Appellant*

v.

Leslie Tritten, Field Office Director, SP-M Field Office, U.S. Citizenship and Immigration Services ("USCIS"); David Douglas, Director of USCIS, District 15; Tracy Renaud, Senior Official Performing the Duties of the Director, USCIS; Merrick B. Garland, U.S. Attorney General; Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: March 10, 2022
Filed: March 15, 2022
[Unpublished]
_____

Before BENTON, KELLY, and KOBES, Circuit Judges.
_____

PER CURIAM.

Serkan Haciosmanoglu, a native and citizen of Turkey, filed a petition for review under 8 U.S.C. § 1421(c), seeking de novo judicial review after the United States Citizenship and Immigration Services (USCIS) denied his application for naturalization. The district court granted the government's motion to dismiss the petition with prejudice under Federal Rule of Civil Procedure 12(b)(6), on the ground that Haciosmanoglu failed to establish he is a person of good moral character as required by 8 U.S.C. § 1427(a). Haciosmanoglu appeals. We find the district court erred by treating Haciosmanoglu's 2015 disorderly conduct conviction as a per se bar to naturalization, and we reverse and remand for further proceedings.

As an applicant for naturalization, Haciosmanoglu has the burden of proving by a preponderance of the evidence that he meets all requirements. See Nyari v. Napolitano, 562 F.3d 916, 919 (8th Cir. 2009) (citing 8 C.F.R. § 316.2(b)). One of those requirements is that he must show he "has been and still is a person of good moral character" during the relevant period. See 8 U.S.C. § 1427(a), (e); see also 8 C.F.R. § 316.10(a). Aside from the good moral character requirement, the government does not dispute that Haciosmanoglu otherwise qualifies for naturalization.

The Immigration and Nationality Act (INA) does not define "good moral character," though it enumerates certain classes of individuals who are barred from meeting that requirement. See 8 U.S.C. § 1101(f); see also 8 C.F.R. § 316.10(b)(1)-(2). No one asserts Haciosmanoglu falls into any of these enumerated classes.

The INA also includes a catchall provision that allows for an adverse character finding based on "other reasons." See 8 U.S.C. § 1101(f). In the naturalization context, agency regulations provide that, in accordance with section 1101(f), an applicant's good moral character must be evaluated "on a case-by-case basis taking into account . . . this section and the standards of the average citizen in the community of residence." See 8 C.F.R. § 316.10(a)(2). However, even if an applicant does not

fall within an enumerated class, "[u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts." See 8 C.F.R. § 316.10(b)(3)(iii). Haciosmanoglu does not contest the district court's conclusion and the government's assertion that this regulation is entitled to deference under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). See, e.g., United States v. Dang, 488 F.3d 1135, 1140-41 (9th Cir. 2007) (affording Chevron deference to § 316.10(b)(3)(iii)); United States v. Suarez, 664 F.3d 655, 660-61 (7th Cir. 2011) (same); United States v. Jean-Baptiste, 395 F.3d 1190, 1194 (11th Cir. 2005) (same). We assume, without deciding, that it is.

Haciosmanoglu pleaded guilty in 2015 to misdemeanor disorderly conduct under Minnesota Statutes § 609.72. Under Minnesota law, disorderly conduct occurs where an individual, in a public or private place, "engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others," and does so "knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72 subd. 1(3). The state court stayed imposition of Haciosmanoglu's sentence and ultimately vacated and dismissed the conviction.

In granting the government's motion, the district court concluded the disorderly conduct conviction adversely reflected on Haciosmanoglu's moral character as a matter of law based on 8 C.F.R. § 316.10(b)(3)(iii). The court reasoned that disorderly conduct, by definition, "inherently suggests a moral transgression," and "the raison d'etre for a law against disorderly conduct [including Minn. Stat. § 609.72 subd. 1(3)] is to penalize aberrant behavior that falls below community standards." Because the court further concluded Haciosmanoglu did not plausibly allege

extenuating circumstances that would mitigate his culpability, it granted the government's Rule 12(b)(6) motion.

On appeal, Haciosmanoglu argues he established good moral character, and, alternatively, he established extenuating circumstances.[1] He also asserts he was entitled to a hearing under 8 U.S.C. § 1421(c), which instructs that a district court's review of an application for naturalization "shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." Appellees urge affirmance and argue section 1421(c) permits, but does not require, a de novo hearing.

Reviewing de novo the district court's order granting the government's Rule 12(b)(6) motion and accepting the factual allegations as true, we conclude the district court erred by dismissing Haciosmanoglu's petition. See Al-Saadoon v. Barr, 973 F.3d 794, 800, 804 (8th Cir. 2020) (standard of review), cert. denied sub nom. Al-Saadoon v. Garland, 141 S. Ct. 2703 (2021).

The district court found that Haciosmanoglu's disorderly conduct conviction precludes a finding of good moral character and, by extension, is a bar to naturalization. But disorderly conduct is not among the enumerated bars to a finding of good moral character in section 1101(f). Rather, it is an "unlawful act" to be analyzed under 8 C.F.R. § 316.10(b)(3). A district court's obligation to evaluate an applicant's good moral character "on a case-by-case basis taking into account . . . the standards of the average citizen in the community of residence" applies when faced with an applicant who has committed an unlawful act under § 316.10(b)(3). See Hussein v. Barrett, 820 F.3d 1083, 1089 (9th Cir. 2016) (concluding

---

[1]Haciosmanoglu has waived any challenge to the dismissal of his Administrative Procedures Act claim and request for declaratory judgment by failing to offer any meaningful argument on those claims. See Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004).

§ 316.10(b)(3)(iii) is not "an enumerated element that serves as a per se bar to naturalization"); <u>Olaifa v. McAleenan</u>, No. 18-6801, 2019 WL 5183887, at *1, 2-3 (N.D. Ill. Oct. 15, 2019) (denying the government's Rule 12(b)(6) motion to dismiss, concluding a non-enumerated offense did not adversely reflect upon an applicant's moral character as a matter of law under § 316.10(b)(3)(iii) because "[i]f Congress had wanted that result, it would have categorically excluded [such offenses] along with [other enumerated classes]"). Here, the district court did not engage a case-specific analysis and, as such, it erred by treating Haciosmanoglu's disorderly conduct conviction under section 609.72 subd. 1(3) as a bar to naturalization as a matter of law.

Indeed, accepting the factual allegations as true and considering the totality of the circumstances, Haciosmanoglu's petition contains allegations sufficient to plausibly allege, at the pleadings stage, he is a person of good moral and is entitled to naturalization. <u>See</u> <u>Hussein</u>, 820 F.3d at 1089 ("[I]f a non-enumerated category is being considered then the court is required to also consider all evidence relevant to the applicant's character."). The district court should not have ended its analysis with the definition of disorderly conduct but should have looked to the facts pleaded as required for a case-by-case assessment of naturalization applications. We therefore reverse the judgment of the district court and remand for further proceedings.[2]

_____

[2]Because we find the district court erred in its reliance on the disorderly conduct conviction as a per se bar to a good moral character finding and reverse on that basis, we need not reach the parties' arguments regarding extenuating circumstances or whether a hearing was required under section 1421(c).