**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

TENG JIAO ZHOU,
*Defendant-Appellant*.

No. 14-55027

D.C. No.
2:13-cv-02145-
BRO-CW

OPINION

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted
February 8, 2016—Pasadena, California

Filed March 7, 2016

Before: Marsha S. Berzon, Andre M. Davis*,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

---

* The Honorable Andre M. Davis, Senior Circuit Judge for the U.S.
Court of Appeals for the Fourth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel affirmed the district court's order granting the government's motion for judgment on the pleadings and its judgment revoking Teng Jiao Zhou's naturalization pursuant to 8 U.S.C. § 1451(a).

The panel affirmed the district court's denaturalization judgment under 8 U.S.C. § 1101(f), the "catch-all" provision, on the ground that Zhou's robbery conviction prevented him from establishing good moral character during the statutory period. The panel held that robbery was an unlawful act which reflected adversely on Zhou's moral character and for which he could not show extenuating circumstances.

### COUNSEL

Armineh Ebrahimian (argued), Rosemead, California, for Defendant-Appellant.

Troy D. Liggett (argued), Stuart F. Delery, William C. Peachey, and Elizabeth J. Stevens, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

OWENS, Circuit Judge:

Appellant Teng Jiao Zhou appeals from the district court's order granting the government's motion for judgment on the pleadings and its resulting judgment of denaturalization. Zhou committed robbery during the relevant statutory period prior to his naturalization. Because the robbery is an unlawful act that reflects adversely on Zhou's moral character and for which he cannot show extenuating circumstances, we affirm.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Zhou emigrated from China in 1985, and applied for naturalization in 1993. He attended his naturalization interview, filled out the necessary Form N-400 application, and passed the naturalization exam.

Also in 1993, Zhou went into business with a man named Tong, but that relationship broke bad. On March 8–9, 1994, Zhou physically seized Tong, threatened him, and stole from him. Due to this conduct, Zhou was ultimately charged with robbery, kidnaping, and extortion. Although his first jury deadlocked, a second jury found him guilty of Robbery of the First Degree (Cal. Penal Code § 211) and False Imprisonment with Violence or Menace (Cal. Penal Code §§ 236–37) on November 21, 1994. The trial judge sentenced Zhou to the "high term" of six years for the false imprisonment conviction, finding in aggravation Zhou's "threats of great bodily harm to the victim" and his "position of leadership over others during the commission of the offense." The judge

concurrently sentenced Zhou to the "mid term" of two years for the robbery conviction.

Despite this serious criminal activity, Zhou's quest for citizenship continued. On March 22, 1994—after Zhou's March 8–9 criminal activity but before his June arrest and his November jury conviction—he completed a Form 445-A, in which Zhou updated his earlier Form N-400. Form 445-A asked whether, since his initial naturalization interview, Zhou had "knowingly committed any crime or offense, for which [he] ha[d] not been arrested?" Zhou answered no. On March 31, 1994, Zhou took his oath of allegiance and became a naturalized U.S. citizen.

Nearly 20 years passed, and the record reveals no additional misconduct by Zhou. However, on March 25, 2013, the government filed a complaint to revoke Zhou's naturalization. The government argued that the 1994 convictions—for which the underlying unlawful conduct occurred during the relevant five-year period preceding Zhou's naturalization—meant that Zhou lacked the necessary good moral character required to naturalize. *See* 8 U.S.C. § 1427(a)(3) (no person shall be naturalized unless the applicant "has been and still is a person of good moral character").[1] The government then moved for judgment on

---

[1] The nearly 20-year delay between Zhou's conviction and the complaint to revoke his naturalization is very troubling, and the government (in its briefs and at argument) failed to explain why it waited so long to bring this action. While this delay could make a strong case for laches against the government, Zhou never made a laches argument before the district court or this court, so we do not reach this issue. *See Costello v. United States*, 365 U.S. 265, 282 (1961) (leaving the question of laches open in the denaturalization context); *United States v. Dang*, 488 F.3d 1135, 1143–44 (9th Cir. 2007) (recognizing that the issue remains open).

the pleadings on two bases: (1) 8 U.S.C. § 1101(f)(3) (for having committed crimes involving moral turpitude during the statutory period); and (2) the "catch-all" provision of 8 U.S.C. § 1101(f), as promulgated in 8 C.F.R. § 316.10(b)(3)(iii) (for having committed unlawful acts that adversely reflect on one's moral character during the statutory period). The district court granted the government's motion on both grounds. Because we affirm the district court's application of section 1101(f)'s "catch-all" provision, we need not review the application of section 1101(f)(3).

Relevant to our review under the "catch-all" provision, the district court concluded that First Degree Robbery, as defined in Cal. Penal Code § 211, is a crime involving moral turpitude, which constitutes an unlawful act that adversely reflects on one's moral character. *See Mendoza v. Holder*, 623 F.3d 1299, 1302–04 (9th Cir. 2010).[2] Zhou attempted to downplay the seriousness of his crimes, arguing that (1) they arose from a mere business dispute, (2) the first jury could not reach a verdict, and (3) he had no other criminal convictions. Following *United States v. Jean-Baptiste*, 395 F.3d 1190, 1195 (11th Cir. 2005), and *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011), the district court rejected these attempts to establish "extenuating circumstances" under 8 C.F.R. § 316.10(b)(3)(iii). The district court reasoned that it had limited discretion to apply this exception, and that none of the stated grounds rendered Zhou's crimes "less reprehensible than [they] otherwise

---

[2] The district court also held that the False Imprisonment with Violence or Menace conviction was an unlawful act that adversely reflected on Zhou's moral character. We need not review that alternative holding here, as Zhou's robbery conviction prevented him from establishing good moral character during the statutory period.

would be, or tend[ed] to palliate or lessen [his] guilt." *Suarez*, 664 F.3d at 662 (quoting Black's Law Dictionary (6th ed. 1990)). The district court entered the judgment of denaturalization, and this appeal followed.

## II. STANDARD OF REVIEW

We review a district court's order granting judgment on the pleadings de novo. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999).

## III. ANALYSIS

A naturalized individual's citizenship "should not be taken away without the clearest sort of justification and proof," *Schneiderman v. United States*, 320 U.S. 118, 122 (1943), as "its loss can have severe and unsettling consequences," *Fedorenko v. United States*, 449 U.S. 490, 505 (1981). Due to the extremely high stakes involved, "[t]he evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt." *Id.* (citation and internal quotation marks omitted). If the government meets its high burden, however, a court must enter a judgment of denaturalization—it lacks any discretion to do otherwise. *Id.* at 517–18.

Under 8 U.S.C. § 1451(a), the government may file a complaint to revoke naturalization if a citizen's naturalization was "illegally procured" or "[was] procured by concealment

of a material fact or by willful misrepresentation." Only the illegal procurement theory is at issue in this appeal.

Naturalization was "illegally procured" if the individual did not meet the statutory requirements for citizenship. *Fedorenko*, 449 U.S. at 506; *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007). One requirement for citizenship is that an applicant must be of "good moral character" for the five years immediately preceding the date of the filing of the application for naturalization until the time the applicant takes the oath of allegiance. 8 U.S.C. § 1427(a). Under section 1101(f), a person will not "be regarded as, or found to be, a person of good moral character" if, within the statutory period, he fell into any of several enumerated categories. Section 1101(f)'s additional "catch-all" provision provides that "[t]he fact that any person is not within any of the foregoing [categories] shall not preclude a finding that for other reasons such person is or was not of good moral character."

Under section 1101(f), the government promulgated 8 C.F.R. § 316.10, which offers guidance on making moral character determinations. It includes the following language:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant: (i) Willfully failed or refused to support dependents; (ii) Had an extramarital affair which tended to destroy an existing marriage; or (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character,

> or was convicted or imprisoned for such acts
> . . . .

8 C.F.R. § 316.10(b)(3).**[3]**  We have held that this regulation is a permissible interpretation of section 1101(f) under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), so we apply it here.  *See Dang*, 488 F.3d at 1140–41.

The facts of Zhou's case are unusual in that, while he committed the relevant crime during the statutory period prior to his naturalization, he was not charged with, arrested for, or convicted of the crime until after he took his oath of allegiance and became a naturalized citizen.  We have not applied sections 1101(f) and 316.10(b)(3)(iii) in precisely these circumstances, but we have applied those provisions to a situation where the commission of, and indictment and arrest for, the crime occurred before the oath of allegiance, but the resulting conviction came after.

In *Dang*, Dang set fire to her van while she and her son were inside as part of an insurance fraud scheme.  Shortly after the fire (and while out on bail after arrest), Dang took the oath of allegiance and became a United States citizen. Later that same year, she was convicted of arson and related crimes and sentenced to eleven years in prison.  488 F.3d at 1137–38.  As in this case, the government in *Dang* moved for her denaturalization because she lacked good moral character at the time of naturalization under the section 1101(f) "catch-all" provision and 8 C.F.R. § 316.10 as promulgated thereto.

---

**[3]** An earlier version of the regulation was in effect in 1994, and is materially identical to the version that the district court analyzed.  *See* Administrative Naturalization, 56 Fed. Reg. 50,486 (Oct. 7, 1991).

Our court rejected Dang's various statutory and constitutional challenges to 8 C.F.R. § 316.10. We affirmed the district court's decision to denaturalize Dang, even though her convictions for arson and related offenses came after she took the oath to become a United States citizen. *Id.* at 1137–38, 1144.

The *Dang* decision is in accord with those in other circuits, including at least one in which the indictment, arrest, and conviction all occurred after naturalization. *Suarez*, 664 F.3d at 657; *see also id.* at 661 (explaining that, under the "catch-all" provision, "a conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character," and "[i]t is enough that the offense was 'committed' during that time"); *Jean-Baptiste*, 395 F.3d at 1191, 1194 (holding that a naturalized citizen who committed unlawful acts under the "catch-all" provision during the statutory period prior to taking the oath of allegiance, but who was indicted, arrested, and convicted only after naturalization, could have his citizenship revoked for lack of good moral character).

Applying these cases, the same result obtains here. A jury convicted Zhou of robbery, a crime involving moral turpitude. *See Mendoza*, 623 F.3d at 1302–04. The parties agree that these acts occurred during the relevant five-year period for which Zhou was required to demonstrate good moral character. With these facts, the district court did not err in concluding that the "unlawful act" of robbery reflected "adversely" on Zhou's moral character.[4] Zhou has no serious

---

[4] Our opinion is limited to reviewing the application of 8 C.F.R. § 316.10(b)(3)(iii), involving "unlawful acts" that "adversely reflect" on moral character, to the facts at hand. We do not consider the legitimacy

response on this issue, and conceded at argument that there is no dispute that Zhou committed a crime involving moral turpitude during the statutory period.

Instead, Zhou tries to argue that the facts of his case entitle him to invoke the "extenuating circumstances" exception, which would enable him to avoid denaturalization. *See* 8 C.F.R. § 316.10(b)(3)(iii). Although he attempts to minimize his culpability and role in the offense—referring to it as a mere "business dispute"—a jury unanimously thought otherwise, and that verdict binds this court. *See, e.g.*, *Jean-Baptiste*, 395 F.3d at 1194 ("Collateral estoppel bars a defendant who is convicted in a criminal trial from contesting this conviction in a subsequent civil action with respect to issues necessarily decided in the criminal trial.").

To the extent that Zhou contends that his otherwise clean record creates "extenuating circumstances," that contention misapprehends the nature of the exception. The narrow "extenuating circumstances" exception, applicable to having failed to support dependents or engaged in an extramarital affair, as well as to the commission of a crime, focuses on the circumstances during the statutory period, and so, here, focuses on circumstances during the statutory period that may "palliate or lessen" an offender's guilt for an offense. *Suarez*, 664 F.3d at 662 (quoting Black's Law Dictionary (6th ed. 1990)). It is not a post-naturalization retrospective on the

---

of denaturalization based on other parts of section 316.10, including the subsections specifying that having "[w]illfully failed or refused to support dependents" or engaged in "extramarital affair[s] which tended to destroy . . . existing marriage[s]," § 316.10(b)(3)(i), (ii), precludes a finding of good moral character, absent extenuating circumstances. Nor do we address the categories listed in 8 U.S.C. §§ 1101(f)(1) through 1101(f)(9).

person, his achievements, or the unfortunate effect that denaturalization will surely have. *See Jean-Baptiste*, 395 F.3d at 1195 (explaining that "extenuating circumstances . . . must pertain to the reasons showing lack of good moral character, including acts negating good character, not to the consequences of these matters, including the consequence of denaturalization"). Zhou, however, has not pointed to anything in the record that demonstrates any extenuating circumstances during the statutory period. The seriousness of Zhou's conviction, his significant sentence, and the absence of any record concerning mitigating matter during the statutory period, confirms that there are no "extenuating circumstances" that would permit relief here.

Zhou also argues that for the government to demonstrate that Zhou "illegally procured" his naturalization under section 1451(a), it needed to prove that Zhou knew his actions of March 8–9, 1994 constituted a crime when he completed his Form 445-A. Zhou states that he had no knowledge that he had committed a crime (and to this day maintains his innocence), so any misrepresentation on his form was inadvertent.

As stated above, under section 1451(a), the government may seek denaturalization under two independent legal theories: that naturalization was procured (1) illegally; and (2) through concealment of a material fact or by willful misrepresentation. While the individual's scienter with respect to any misrepresentation is relevant to the latter theory, there is no authority in the statute or case law to require the government to prove that Zhou knew his conduct was illegal at the time he naturalized under the former. *See Fedorenko*, 449 U.S. at 516–17 (explaining that if an individual does not meet the statutory requirements for

naturalization, naturalization was illegally procured). Zhou exhibited a lack of moral character by committing a serious crime—robbery. Whether at the time he took the oath of allegiance he knew that he violated any specific law or that he lacked moral character is irrelevant to our "illegally procured" analysis.

Accordingly, the district court did not err in holding that Zhou could not establish good moral character under section 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii). Thus, it was required to enter a judgment of denaturalization.

## IV.   CONCLUSION

While we fail to understand why the government waited nearly two decades to bring this action against an otherwise law-abiding individual, ultimately our lack of comprehension is irrelevant. What matters is that Zhou committed an unlawful act just days before he took the oath of allegiance. That unlawful act, absent extenuating circumstances, required the district court to revoke Zhou's certificate of naturalization.

**AFFIRMED.**