Pregerson, J.,
dissenting
Revoking Marisela Castro-Juaréz’s (“Marisela Castro”) U.S. citizenship through summary judgment, thereby bypassing a trial on the merits, is inappropriate and cruel.
It is no exaggeration to describe Marise-la Castro’s adolescent and teenage years as a “living hell.” From the age of six, Marisela Castro suffered ceaseless sexual abuse at the hands of multiple predatory men: two uncles, a tenant in her mother’s house, and her mother’s boyfriend. Her mother abandoned her when she was 11, choosing an abusive boyfriend over her own daughter.
Marisela Castro spent the next- eight years bouncing around more than twenty foster homes and living on the streets. She frequently considered taking her own life.
During this time, when she was only fifteen, Marisela Castro was arrested for trespassing and spent six months in Juvenile Hall. She was homeless at the time, and she and a friend were in an abandoned home, looking for a place to sleep. On many other occasions, the police would find Marisela Castro sleeping in an abandoned home or in a field and take her to Juvenile Hall for the night or return her to her foster home.
When she was eighteen, Marisela Castro spent two nights in jail after being arrested by the Fresno police for drug intoxication. Having spent many nights in jail without having been arrested, Marisela Castro did not understand the circumstances of this arrest, and she assumed she was taken to Fresno jail to sleep off her condition.
Marisela Castro was depressed and angry and often felt like she did not care whether she lived or died. To survive this traumatic and unstable time in her young life, she blocked out negative painful and destructive memories.
Yet Marisela Castro was able to overcome her devastating past. She went back to school to earn her GED and to complete a medical assistant course. She now works full time as a sous-chef in a restaurant and *368 single-handedly supports her three U.S. citizen children. Her two sons live with her, and her oldest daughter attends college. I find it hard to justify depriving Marisela Castro of her American citizenship through summary judgment.
It is important to keep in mind that “[i]n a denaturalization proceeding, the government bears a ‘heavy burden’ of providing ‘clear, unequivocal, and convincing’ evidence that citizenship should be revoked.” United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (emphasis added) (quoting United States v. Dang, 488 F.3d 1135, 1139 (9th Cir. 2007)).
As the Supreme Court has emphasized, and we have reiterated, “The government bears the burden of such a high degree of proof in denaturalization proceedings because of the ‘importance of the right that is at stake.’ ” Id. (quoting Fedorenko v. United States, 449 U.S. 490, 505-06, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981)). Considering this “heavy burden,” summary judgment for the government is rarely warranted. Id.
Marisela Castro raised a genuine issue of material fact as to whether the government met this high burden regarding the willfulness of her misrepresentations during her naturalization proceedings. Marise-la Castro provided an extremely detailed sworn declaration. In her declaration, she described her criminal history—her stay in Juvenile Hall after being picked up for trespassing and the two nights she spent in Fresno Jail. She also described her mental state during the time of her naturalization proceedings to explain her inability to recall that history. She explained that she had deeply suppressed painful memories from her traumatic and abusive past in order to survive on the streets. She described the period of time in which these arrests took place as covered by a “mental fog.”
The majority argues that Marisela Castro should have provided corroborating evidence regarding her “mental fog.” But, as we have stated, “[A party’s] sworn statements cannot be disbelieved at the summary judgment stage simply because [her] statements are in [her] interest and in conflict with other evidence.” Arango, 670 F.3d at 994. Marisela Castro’s declaration speaks to her failure to accurately represent her criminal history and how she recovered her suppressed memories only after intensive individual and group therapy in prison that lasted several years.
Her declaration provides direct evidence of the central fact in dispute. The fact that Marisela Castro was able to recall some information, such as past residences, from the same, time period does not discount the fact that her memory of this time period was not wholly reliable. Recent studies on PTSD and episodic amnesia support Mar-isela Castro’s experience of memory loss. As one recent study on trauma and memory indicates, “If you are motivated to try to prevent yourself from reliving a flashback of [your] initial trauma, anything that you experience around that period of time of suppression tends to get sucked up into this black hole as well.” Nicola Davis, Suppressing Traumatic Memories Can Cause Amnesia, Research Suggests, Guaedian, Mar. 15, 2016.[1]
Had there been a trial, an expert could have testified about the nature of memory suppression to support Marisela Castro’s description of her “mental fog.”
*369 At the summary judgment stage, accepting Marisela Castro’s experience of memory loss as true, she certainly has raised an issue of fact for trial. The majority correctly notes that issues of a party’s state of mind are typically inappropriate for resolution on summary judgment. Maj. at 3 (citing Braxton-Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir. 1985)). Marisela Castro’s case is no different.
Marisela Castro has provided evidence sufficient to overcome summary judgment. Her American citizenship is too precious to be torn from her without even a hearing where the government has to prove its case with clear, unequivocal, and convincing evidence. This is why I dissent.

. For the full study, see Justin C. Hulbert et al., Inducing Amnesia Through Systemic Suppression, 7 Nature Comm. 11003 (2016).